In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00014-CR
______________________________


SCOTTY WAYNE ALLEN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 17,541-2003


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Scotty Wayne Allen attempts to appeal from an order placing him on deferred
adjudication. The record reflects he was placed on deferred adjudication pursuant to a
plea agreement. On December 15, 2003, the trial court, in accordance with Tex. R. App. P.
25.2(a)(2), entered its certification of Allen's right to appeal, stating that this "[i]s a
plea-bargain case, and the Defendant has NO right of appeal." 
          Unless a certification, showing that a defendant has the right of appeal, is in the
record, we must dismiss the appeal. See Tex. R. App. P. 25.2(d). Because the trial court's
certification affirmatively shows Allen has no right of appeal, we dismiss his appeal.
          We dismiss the appeal. 
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      February 11, 2004
Date Decided:         February 12, 2004

Do Not Publish




 said, "You had me arrested, and if I see your mother-fucking ass
again, I'll blow your mother-fucking ass up." Annie also stated she had told a police officer
a day later Lonel had said, "You mother-fuckers think y'all are slick. None of you mother-fuckers are no good. I'm going to get y'all's mother-fucking ass." 
          Lonel points out he made the telephone call from the jail, that it was dialed by a
jailer, and that the jailer was nearby while he talked to Annie. The jailer testified that, if
abusive language had been used in a loud or a normal speaking voice, he would have
heard it—and that he did not. Telephone records showed that the call was made at
10:52:30 p.m. and that the next call out was made forty-five seconds later. The jailer also
testified that one of his purposes for being there was to keep threats from being made and
that, if he had heard a threat, he would have made a note and reported it. He
acknowledged Lonel could have spoken softly enough for him to be unable to hear him,
and counsel points out this is contrary to Annie's testimony that Lonel was speaking loudly
to her over the telephone.
          However, the jailer also testified that Lonel was not the only inmate with whom he
was dealing at the time and that he did not know what took place during this particular
telephone call or what Lonel said. The jailer also testified that, after giving the telephone
to the inmate to make the call, he then typically moved to a nearby computer to process
paperwork. There was some testimony about the amount of traffic and noise in the room
(which was occasionally considerable on a Saturday night), but nothing specific to this
particular night or time. 
          The ultimate point of the jailer's testimony was that he simply did not remember the
incident.
          Karyl Patterson, an operations clerk for the department, testified Annie telephoned
the office at 10:57 that night and told her that Lonel had threatened her by telephone and
that she thought the call had come from the jail. She testified that Annie sounded excited,
fearful, or scared, and that Annie had recounted the threat to her, which she recorded in
the report as set out above. 
          Lonel also points out that Annie called the police often for a number of different
reasons. There was testimony that, because she was blind, she was quite aware of her
surroundings and the possibility of danger, and called police often. Her daughter
speculated Annie might have called as many as 200 times over the last three years. 
          Under the standard articulated in Threadgill and set out above, the evidence shows
that a seventy-seven-year-old woman was threatened by a drunken relative. She used
different words at different times to attempt to reproduce the exact words used by Lonel,
but never wavered in her contention that he had, obscenely and with great directness,
threatened her life. The fact the jailer did not hear the conversation, and should have had
Lonel been yelling or talking loudly, does not eliminate the possibility that Lonel might have
spoken relatively quietly but intensely into the mouthpiece of the telephone. Further, the
volume of his speech is not the critical point. The jailer could not testify that the
conversation recounted by Annie did not happen, only that he did not hear it. Further,
Annie called police and reported the threat less than five minutes after the telephone call
ended. The fact that she calls the police regularly about a number of occurrences that
worry her does not mean that in this instance she was not actually threatened.
          The evidence in favor of the verdict is not so outweighed by the contrary proof to
sustain a conclusion that the evidence is factually insufficient to support the verdict. The
contention of error is overruled
          We affirm the judgment. 
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 29, 2004
Date Decided:         December 21, 2004

Do Not Publish